## BROKER-CARRIER CONTRACT

THIS CONTRACT IS MADE _Oct. 1_, 20_19_ between T.G.R. Logistics, Inc., a Washington corporation, 13990 Fir Street, Oregon City, OR 97045 ("T.G.R."), and _DD+S Express Inc._ _185 Harry S. Truman Pkwy, Suite 116, Annapolis, MD 21401_ ("CARRIER").

**RECITALS:**

A. T.G.R. is a Federal Motor Carrier Safety Administration ("FMCSA") registered broker holding authority in docket No. MC-404801, a copy of which is incorporated herein by this reference, and assigned USDOT No. 2227621.

B. CARRIER is an FMCSA registered motor carrier holding authority in docket no. MC-_326288_, a copy of which is incorporated herein by this reference, and assigned USDOT No. _361802_.

C. T.G.R. and CARRIER are entering into this Contract so that all freight tendered by T.G.R. to CARRIER and transported by CARRIER for T.G.R. during the term of the Contract is transported by CARRIER as a contract carrier under the terms of this Contract.

D. This Contract and the relationship between T.G.R. and CARRIER are intended, and shall be construed, to meet the requirements set forth in 49 U.S.C. §§ 13102(4)(B) and 14101(b).

**TERMS AND CONDITIONS:**

1. **Scope; Contract Carriage; Waiver.**

    a. **Scope.** This Contract shall govern all shipments, whether moving in interstate, intrastate or foreign commerce, tendered by T.G.R. to CARRIER for transportation and accepted by CARRIER, during the term of this Contract.

    b. **Contract Carriage.** All transportation services performed by CARRIER for T.G.R. during the term of this Contract shall be as a contract carrier pursuant to and in accordance with the provisions of 49 USC §§ 13102(4)(B) and 14101(b) and the regulations issued thereunder, if any.

    c. **Limited Waiver of Statutory Rights Under 49 USC § 14101(b).** Except to the extent that the provisions of this Contract conflict or are inconsistent with the provisions of 49 USC Subtitle IV, Part B, the parties do not waive any rights and remedies they, or either of them, may have under 49 USC Subtitle IV, Part B. Limited to the extent the provisions of this Contract conflict or are inconsistent with the provisions of 49 USC Subtitle IV, Part B, T.G.R. and CARRIER expressly waive any and all rights and remedies they, or either of them, may have under 49 USC Subtitle IV, Part B. This waiver is made pursuant to 49 USC § 14101(b)(1), and the parties each understand, acknowledge and intend that the transportation provided under this Contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the grounds that it violates the waived rights and remedies. This waiver does not apply to the provisions of those laws governing registration, insurance, or safety fitness. The exclusive remedy for any alleged breach of the waived rights or remedies shall be as provided herein.

2. **Term and Termination.** The term of this Contract shall begin on the date set forth above and shall remain in effect until terminated by either party giving the other party at least thirty (30) days prior written notice.

3. **Specific Obligations of T.G.R.**

    a. **Volume.** T.G.R. anticipates tendering a series of shipments to CARRIER for transportation during the term of this Contract, but T.G.R. is not obligated to tender any minimum number of shipments to CARRIER.

    b. **Payment.** T.G.R. agrees to pay CARRIER for the transportation of the shipments transported under this Contract the rates and charges set forth in paragraph 7 herein, within thirty (30) days after the receipt by T.G.R. of CARRIER's invoice and other required documents in accordance with paragraph 4.m.

4. **Specific Obligations of CARRIER.**

    a. **Service.** CARRIER shall transport by motor vehicle those shipments tendered to CARRIER by T.G.R. and accepted by CARRIER from and to such points between which service is required, without delay, subject to the availability of suitable equipment for the cargo offered and the specific shipment instructions, all in accordance with the terms and conditions of this Contract. CARRIER shall have sole and absolute discretion whether to accept or reject any shipment tendered to it by T.G.R.

    b. **Costs and Expenses.** CARRIER, at its sole cost and expense, shall furnish all equipment necessary to provide service hereunder and shall maintain all equipment in clean, odor- and contaminant-free condition, good repair and working order. CARRIER, at its sole cost and expense, shall provide all employees or other personnel necessary to provide service hereunder; and all employees or other personnel (including independent contractors) provided shall be competent and legally qualified to handle and transport the shipments

1 – BROKER-CARRIER CONTRACT
(F:\CLIENTS\6312\6312-1\Corporate\2014-05-16 Broker Carrier Contract-Final.doc)

CARRIER'S INITIALS _DM_ _10/1/19_ (Date)

transported hereunder. CARRIER shall be solely responsible for and shall pay any and all costs and expenses incurred in connection with providing service hereunder; and such costs and expenses shall include, but not be limited to, the following: All operating and administrative costs including wages of drivers and other personnel and related employment/personnel expenses such as social security, workers' compensation insurance, unemployment and other payroll taxes; costs of tires, fuel and maintenance for the equipment; federal and state highway use taxes and license prorate fees for the equipment; all mileage taxes; costs of all permits; gross revenue taxes, equipment valuation taxes, road taxes and tolls, equipment use fees or taxes, and any other tax, fine or fee imposed or assessed against the equipment, cargo or service provided by any federal, state or provincial authority; empty mileage costs and expenses; ferry charges; accessorial services; and tarping costs and expenses. CARRIER shall be responsible for loading and unloading, including lumper charges unless reimbursement of lumper charges is agreed to in advance, in writing by T.G.R.; and, in that event, CARRIER's invoice under paragraph 4.m. must be accompanied by a valid signed receipt issued to the CARRIER by the consignor or consignee or their agents confirming the charges and their receipt of payment from CARRIER. In the event T.G.R. shall at any time pay or incur a liability for any of the above items or other costs or expenses which are the responsibility of CARRIER, T.G.R. has the right to deduct the same from any payment due CARRIER from time to time. In no event shall CARRIER charge or cause to be charged to T.G.R. or T.G.R.'S account any cost or expense. CARRIER shall indemnify and hold T.G.R. and T.G.R.'S officers, directors, shareholders, employees and agents harmless from and against any loss, damage, claim, liability, expense (including administrative costs and attorney fees) and other cost resulting from or arising out of CARRIER's failure to strictly comply with the requirements of this paragraph 4.b. CARRIER's obligation under this paragraph to defend, hold harmless and indemnify T.G.R. shall survive any termination of this Contract.

    c.  **Subcontracting Prohibited.** CARRIER shall not cause or permit any shipment accepted by CARRIER to be brokered, sub-contracted or transported by or through any other carrier or in substituted service by railroad or any other mode of transportation. All shipments accepted by CARRIER shall be transported by equipment registered, licensed, insured, and identified by CARRIER under its own name and USDOT number; and all shipments, equipment and operations shall be insured by insurance policies obtained by CARRIER and specifically naming CARRIER as the insured.

    d.  **Bill of Lading/Receipt.** CARRIER shall issue a bill of lading or other receipt for all shipments it receives for transportation under this Contract. Failure to issue or sign a bill of lading or receipt shall not affect CARRIER's liability. The bill of lading or receipt shall be conclusive of receipt of the described property by CARRIER in good order and kind, quantity and condition, except as noted on its face by CARRIER at the time CARRIER takes possession of the shipment at the point of origin/pickup. To the extent that language contained in the bill of lading or receipt is in conflict or inconsistent with the terms and conditions of this Contract, this Contract shall prevail. CARRIER agrees that the bill of lading or receipt shall be for the sole purpose of, and function solely as, a receipt for the goods and shall not itself constitute a Contract between CARRIER and T.G.R. or between CARRIER and either the consignor or consignee. Any provision in a bill of lading or receipt which purports to limit, directly or indirectly (e.g. by incorporating matter by reference) the CARRIER's liability for freight loss, damage and/or delay shall be and is null and void. The bill of lading or receipt shall note that the shipment was transported by CARRIER acting as the carrier and that transportation for the shipment was arranged by T.G.R. acting as a broker. In the event T.G.R.'S name is inadvertently entered on the BOL as the carrier of record, CARRIER will correct the information to show it as carrier of record and in no event will CARRIER be relieved of responsibility as carrier of record. The name of the underlying shipper shall be inserted in the blank for the shipper, and the name of the receiver shall be inserted in the blank for the consignee. The bill of lading or receipt is to be signed by CARRIER upon receipt of the shipment and will show the kind, quantity and condition of the cargo received and delivered by CARRIER at the loading and unloading points, respectively. When T.G.R. has assembled multiple shipments into carload or truckload lots, the list of underlying shippers and consignees will be attached as an appendix to the bill of lading or receipt. It is CARRIER's obligation to insure that the bill of lading or other receipt is issued in strict compliance with the requirements set forth in this paragraph even if the bill of lading is prepared by T.G.R., the shipper, or any other person, business or entity. CARRIER shall indemnify and hold T.G.R. and T.G.R.'S officers, directors, shareholders, employees and agents harmless from and against any loss, damage, claim, liability, expense (including administrative costs and attorney fees) and other costs resulting from or arising out of CARRIER's failure to strictly comply with the requirements of this paragraph 4.d. CARRIER's obligation under this paragraph to defend, hold harmless and indemnify T.G.R. shall survive any termination of this contract.

    e.  **Liability Standards for Cargo Loss, Damage and Delay.** CARRIER shall be liable to the shipper, consignee, T.G.R., the owner of the cargo and any other person, business or entity entitled to recover under the bill of lading or applicable law, and their respective assigns, for the full actual loss, damage, or injury to the property or any portion thereof including expenses for delay, costs of recovery, cleanup or containment, occurring while a


CARRIER'S INITIALS

shipment is in the possession or under the control of CARRIER pursuant to this Contract or resulting from CARRIER's performance of, or failure to perform, the services required. All liability standards and burdens of proof are governed by the common law applicable to common carriers or by 49 U.S.C. § 14706 (the Carmack Amendment), if applicable, except that in no event shall CARRIER's liability be limited under the provisions of 49 U.S.C. § 14706(c) or in any other manner. The standards and burdens set forth in the Carmack Amendment, 49 U.S.C. 14706, will apply unless a higher degree of responsibility is called for by the terms and conditions herein, in which event this Contract shall prevail. If the Load Confirmation sent to CARRIER by T.G.R. or the bill of lading or receipt signed by CARRIER specifies critical pickup and/or delivery times specified by the shipper or consignee that must be met, or other special or specific services to be provided by CARRIER, CARRIER shall be bound to meet those critical pickup and/or delivery times and provide those other special or specific services. In no event shall CARRIER accept a shipment with critical pickup and/or delivery times unless it can provide service legally, including in full compliance of the hours of service regulations. Full value of lost or damaged items shall mean any destination market value established by trade sale or other invoice documentation, plus any additional transportation cost. Expenses of delay will include employee or equipment compensation of the consignor and consignee, including overtime and the like. Damages for delay shall include loss of sale and/or profit in those circumstances. If T.G.R., the owner of the cargo, or any other person, business or entity entitled to recover under the bill of lading or other applicable law, or their respective assigns, are required, as determined in their sole discretion, to hire an attorney-at-law to represent them in connection with any claim made against CARRIER under this subparagraph 4.e., they shall be entitled to recover from CARRIER their attorney fees incurred in connection with the claim, regardless whether an arbitration, mediation, lawsuit, or other legal proceeding is filed or held.

f. **Claim Requirements for Cargo Loss, Damage and Delay.** Claims against CARRIER for loss, damage, injury or delay may be filed with CARRIER by T.G.R., parties to the bill of lading, the beneficial owner of the freight and any person, business or entity entitled to recover under the bill of lading. All filed claims shall be acknowledged, investigated and disposed of by CARRIER in accordance with 49 C.F.R. Part 370; provided, however, that CARRIER shall make a disposition of the claim pursuant to 49 C.F.R. § 370.9 (a) within ninety (90) days after the receipt of the claim by the CARRIER; and, further, if CARRIER fails to issue a disposition of the claim within the ninety (90) day period, CARRIER shall be conclusively and strictly held to have accepted liability for the claim in the full amount thereof and shall pay the claim within thirty (30) days thereafter. In the event a claim is filed with CARRIER by T.G.R., CARRIER shall (i) deal exclusively with T.G.R. in resolving the claim and shall not contact any other person in an effort to adjust and settle the claim unless authorized in writing by T.G.R. and (ii) shall fully cooperate with and provide all requested documents and information to T.G.R. in an effort to adjust and settle the claim as expeditiously as possible. The time limits for filing a claim for loss, damage or delay and for filing a lawsuit for recovery of a claim for loss, damage or delay shall be the minimums set forth in 49 USC § 14706(e)(1), that is, nine months for filing a claim and two years and one day for filing a lawsuit, computed from the date the CARRIER gives written notice that the CARRIER has disallowed any part of the claim specified in the notice.

g. **Cargo Insurance.** CARRIER shall maintain cargo insurance in the minimum amount of $100,000 per shipment to compensate the party(ies) entitled to recover under the bill of lading for any and all loss, damage, or loss or damage due to delay, to the shipment which is placed in possession or control of CARRIER in connection with services provided by CARRIER hereunder. CARRIER's cargo insurance must be "all risk" and meet all requirements, if any, for such coverage as required by 49 USC § 13906 and 49 CFR Part 387, as amended from time to time, and T.G.R.'S insurance carrier. CARRIER shall cause its insurance carrier to immediately forward to T.G.R. a standard Certificate of Insurance and also require its insurance carrier to give T.G.R. written notice at least thirty (30) days prior to any modification or cancellation of the cargo insurance. CARRIER shall not accept or continue to transport any shipment at any time the insurance required by this paragraph 4.g. is not in full force and effect. <u>The amount of cargo insurance required by this sub-paragraph does not limit CARRIER's liability for loss, damage, injury or delay</u>. Upon request, CARRIER will provide T.G.R. a complete copy of its cargo insurance policy with all endorsements and riders. T.G.R. reserves the right to require the CARRIER to obtain a higher limit of cargo insurance coverage with respect to any specific shipment; and CARRIER shall not accept or transport the shipment unless and until it has obtained the required higher limit of cargo coverage and a certificate of insurance has been issued by the CARRIER's insurance company directly to T.G.R. confirming that the coverage is in place. In all cases CARRIER shall have its cargo insurance company issue directly to T.G.R. a certificate of insurance evidencing CARRIER's current insurance coverage at the time it accepts and transports any shipment. It is CARRIER's obligation to ensure that T.G.R. has received a current and valid certificate of insurance from the CARRIER's insurance company and/or agent prior to accepting and/or loading any shipment tendered to CARRIER by T.G.R.. Further, CARRIER shall name T.G.R. as an additional insured for the sole purpose of receiving a 30-day advance written notice of cancellation or non-renewal of any cargo insurance coverage required herein. The cargo insurance

3 –   BROKER-CARRIER CONTRACT
(F:\CLIENTS\6312\6312-1\Corporate\2014-05-16 Broker Carrier Contract-Final.doc)



CARRIER'S INITIALS
QA 10/1/19
(Date)

must be issued by companies acceptable to T.G.R., as determined in its sole and absolute discretion.

h. **Public Liability Insurance.** CARRIER shall maintain primary public liability insurance in an amount sufficient to cover any and all liability risks associated with providing service hereunder, and in no event shall the amount be less than $1,000,000 or the amount required by the FMCSA, whichever is greater. The liability insurance shall be in the forms required by 49 USC § 13906(a) and 49 C.F.R. Part 387 and shall have no exclusions or restrictions that would not be accepted by the FMCSA for a filing under the requirements of those sections. In no event shall CARRIER accept, transport, or continue to transport, a shipment unless it has a valid and effective form MCS-90 issued to it in its possession. CARRIER shall cause its insurance carrier to provide T.G.R. a certificate of public liability insurance prior to or at the time this Contract is signed by the parties, which certificate shall require the insurance carrier to give T.G.R. written notice thirty (30) days prior to any modification or cancellation of the liability insurance. CARRIER shall not accept or continue to transport any shipment at any time the insurance required by this paragraph 4. h. is not in full force and effect. <u>The amount of public liability insurance required by this subparagraph h. does not limit CARRIER's liability.</u> Upon request, CARRIER will provide T.G.R. a complete copy of its public liability insurance policy with all endorsements and riders. The liability insurance must be issued by companies acceptable to T.G.R., as determined in its sole and absolute discretion.

i. **Workers' Compensation.** CARRIER shall maintain workers' compensation insurance in full compliance with applicable state laws. CARRIER will provide T.G.R. with a certificate or other proof that it has the required workers' compensation insurance coverage in force. If CARRIER claims that it is exempt from the requirement, it shall provide T.G.R. a certificate in the form attached as Exhibit A, attached hereto and incorporated herein by this reference.

j. **Duration of Liability.** Except as otherwise provided, CARRIER's liability (except for delay in pickup) shall begin at the time the CARRIER assumes possession or control of the cargo from the shipper, which in no event will be later than the time the cargo is loaded upon CARRIER's equipment at the point of origin, and shall continue until the cargo is unloaded from CARRIER's equipment at the destination, is delivered to the consignee named in the bill of lading, CARRIER has obtained a signed delivery receipt from the consignee named on the bill of lading, and nothing else remains to be done by CARRIER to deliver the cargo to the consignee. CARRIER's obligations under this subparagraph j. apply even if no bill of lading is issued. CARRIER's liability for failure to pick up or delay in picking up a shipment shall begin at the time the CARRIER signs the Load Confirmation thereby agreeing to transport a shipment.

k. **Hold Harmless; Indemnification.** To the fullest extent allowed by law, CARRIER shall defend and hold T.G.R. harmless from, and indemnify T.G.R. for, any and all liability, costs (including attorney fees), damages or claims for loss or damage to, or for loss for damages resulting from delay in picking up or delivering, any cargo or shipment CARRIER has agreed to transport pursuant to this Contract. To the fullest extent allowed by law, CARRIER further shall defend and hold T.G.R. harmless from, and indemnify T.G.R. for, any and all liability, costs (including attorney fees), damages and claims for personal injury (including death) or property loss or damage (including, but not limited to, freight loss and damage and claims for delay) arising out of the acts or omissions of CARRIER in providing service hereunder. CARRIER's obligation to defend, hold harmless and indemnify T.G.R. under this subparagraph 4.k. shall extend and obligate CARRIER to reimburse T.G.R. for any and all administrative expense, attorney fee, adjustment fee, insurance deductible, or other cost, fee or expense, of whatever kind, incurred by T.G.R. in connection with any matter for which CARRIER is liable for under this Contract. CARRIER's obligation to defend, hold harmless and indemnify T.G.R. shall extend to and include T.G.R.'S shareholders, directors, officers, employees and agents. CARRIER's obligation to defend, hold harmless and indemnify T.G.R. shall survive any termination of this Contract.

l. **Authority; Compliance with FMCSR.** CARRIER warrants that it has, and will have during the entire term of this Contract, authority from all federal, state, provincial, municipal, and other governmental agencies to legally provide all services called for hereunder. CARRIER warrants that: (i) service will be provided in full compliance with the Federal Motor Carrier Safety Regulations ("FMCSR") including, but not limited to, the hours of service regulations; and (ii) that the driver(s) provided will have sufficient time available under the FMCSR hours of service regulations to provide the requested service including, but not limited to, the time necessary for loading, unloading, tarping and paperwork, without delay and in accordance with the pickup and delivery schedule specified in the Load Confirmation. CARRIER agrees to indemnify, defend and hold T.G.R. harmless from and against any liability, claim, cost (including attorney fees), expense, penalty or the like arising out of any violation of this paragraph 4.l.

m. **Billing; Documents and Information.** CARRIER shall request payment for services provided by it hereunder by delivering an invoice to T.G.R. for each shipment transported within fifteen (15) days after delivery of a shipment. CARRIER's invoice shall, at a minimum, set forth the following information: bill of lading or receipt number; load confirmation number and

CARRIER'S INITIALS
_DM_  _10/1/19_
(Date)

date; consignor's name and address; consignee's name and address; date, time and location of pickup; date, time and location of delivery; a full and complete description and reasons for any loss or damage to the freight; a full and complete description of and reasons for any delay in providing service; and CARRIER's charges to T.G.R. calculated in accordance with paragraph 7.a. and the other provisions of this Contract. CARRIER shall deliver to T.G.R. with its invoice the original signed bills of lading and/or pickup and delivery receipts as evidence of such services, except in those situations where T.G.R. has agreed in advance to accept faxed bills of lading and/or copies of pickup and delivery receipts. If reimbursement of lumper charges have been authorized, CARRIER also must submit a valid receipt in accordance with paragraph 4.b.

n. Waiver of Lien. CARRIER shall neither have nor claim any lien rights on or against any shipment transported under this Contract. In the event that CARRIER violates the terms of this paragraph, it shall (i) forfeit all rights to any and all charges for shipments transported pursuant to this Contract then due and owing by T.G.R. to CARRIER, including charges relating to the shipment against which the lien is claimed; and (ii) be strictly liable to T.G.R., consignor, consignee and the owner of the shipment, and their respective assigns, for conversion.

o. Back Solicitation Prohibited; Confidentiality. CARRIER shall not solicit shipments from any shipper, consignee or customer of T.G.R. where (i) the availability of such shipments first became known to CARRIER as a result of T.G.R.'S efforts or actions; or (ii) where the shipments of the shipper, consignee or customer of T.G.R. were first tendered to the CARRIER by T.G.R. If CARRIER breaches this agreement and "back-solicits" or otherwise solicits T.G.R.'S customers and obtains shipments from such a customer, T.G.R. shall be entitled, for a period of 18 months from the time of such "back solicitation" or other solicitation, to twenty percent (20%) of the gross charges billed by CARRIER with respect to the shipments, regardless whether the charges were or are collected. CARRIER further agrees not to disclose any information regarding any shipment transported pursuant to this Contract to any person or entity not represented in the Load Confirmation or bill of lading or receipt with respect to that shipment, including their authorized representatives.

p. No Authority to Bind T.G.R. CARRIER is not and at no time shall be an agent or employee of T.G.R., and at no time shall CARRIER represent itself to be an agent or employee of T.G.R., but rather CARRIER shall be and is obligated to advise third parties that it is not the agent or employee of T.G.R. and that it has no authority to bind or act on behalf of T.G.R.

q. Foods, Drugs and Cosmetics. CARRIER warrants that it will comply with the Food Safety and Inspection Service Safety and Security Guide for the Transportation and Distribution of Meat, Poultry, and Egg Products; the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (Pub L. 107-188, 2002 HR 3448); all applicable rules and regulations of the Food and Drug Administration; and any and all other federal, state, municipal and provincial laws applicable to the transportation of foodstuffs, drugs, cosmetics and the like. In addition, all equipment used to transport foodstuffs shall meet the standards established by the shipper. It is CARRIER's obligation to obtain and know a shipper's equipment standards prior to accepting a shipment tendered by T.G.R. CARRIER understands that substantially all shipments consist of foodstuffs and that any event that may cause the foodstuffs to be adulterated may require the whole shipment to be destroyed, as determined by the shipper, consignee or owner. In such event, the CARRIER will not be entitled to any salvage value.

r. Safety Fitness Determination/Safety Rating. CARRIER shall at all times maintain a "satisfactory" or "conditional," safety rating or be unrated. CARRIER shall immediately give notice to T.G.R. and, unless expressly authorized in writing by T.G.R., shall refuse to accept any shipment tendered to it by T.G.R. and shall immediately discontinue transporting any shipment in transit after being made aware in any manner that CARRIER has been or is going to be assigned a rating that is less than "satisfactory" or "conditional" or placed out-of-service for any reason. In these circumstances, T.G.R. may (i) terminate this Contract immediately without notice or (ii) authorize CARRIER in writing to complete and deliver a shipment then in-transit, and upon delivery terminate this Contract immediately without notice. T.G.R. reserves the right to require additional documentation if CARRIER assigned or to be assigned a "conditional" safety rating, including, but not limited to, its written safety management plan summarizing its corrective action taken or to be taken (including the timeline) for upgrading its rating to "satisfactory."

s. Compliance with C-TPAT Highway Carrier Security Criteria. To the extent required by law, CARRIER shall comply with the C-TPAT Highway Carrier Security Criteria; and even if not required by law, CARRIER recognizes that C-TPAT Highway Carrier Security Criteria as setting forth best practices and shall implement and follow the minimum criteria set forth therein. Pursuant to this Contract, CARRIER agrees to comply with the Trailer Security requirements set forth in the C-TPAT Highway Carrier Security Criteria, specifically including, but not limited to, the requirements set forth on Exhibit D attached hereto and incorporated herein.

t. California C.A.R.B. Compliance. To the

5 – BROKER-CARRIER CONTRACT
(F:\CLIENTS\6312\6312-1\Corporate\2014-05-16 Broker Carrier Contract-Final.doc)


CARRIER'S INITIALS

extent that any shipments subject to the Contract are transported within or through the State of California, on or after January 1, 2013, **CARRIER** warrants that: (i) all trailers, including both dry-van and refrigerated equipment it operates and the Heavy-Duty Tractors that haul them within California under this Contract are in compliance with the California Air Resources Board (ARB) Heavy-Duty Vehicle Greenhouse Gas (Tractor-Trailer GHG) Emission Reduction Regulations; and (ii) all refrigerated equipment it operates within California under this Contract is in full compliance with the California Air Research Board (ARB) Transport Refrigeration Unit (TRU) Airborne Toxic Control Measure (ACTM) regulations. **CARRIER** shall defend, indemnify and hold T.G.R. harmless from and against any penalty, liability, expense (including administrative costs and attorney fees) and other cost imposed on T.G.R. resulting from or arising out of **CARRIER**'s failure to strictly comply with the requirements of this paragraph 4.t. **CARRIER**'s obligation under this paragraph to defend, hold harmless and indemnify T.G.R. shall survive any termination of this contract.

5. **Load Confirmation.** T.G.R. shall prepare, and both T.G.R. and **CARRIER** shall execute, a Load Confirmation with respect to each shipment tendered by T.G.R. to **CARRIER** and accepted by **CARRIER**; however, failure of T.G.R. to issue or **CARRIER** to sign a Load Confirmation with respect to a shipment shall not affect T.G.R.'S or **CARRIER**'s rights and liabilities hereunder. In the event **CARRIER** fails to sign a Load Confirmation, it nevertheless will be bound by the terms and provisions provided therein if it provides any service whatsoever in connection with the shipment(s) identified therein. A sample of a Load Confirmation is attached as Exhibit C, but the actual form of the Load Confirmation, and the name of the document, if any, may be modified by T.G.R. at any time as determined by T.G.R. in T.G.R.'S sole discretion. The Load Confirmation shall be signed by persons authorized to bind T.G.R. and **CARRIER** to the terms set forth therein. T.G.R. and **CARRIER** agree that facsimile machine and electronically transmitted copies of signed Load Confirmations will be accepted and treated as originals. Any modifications to the original signed or initialed Load Confirmation for a shipment shall be indicated by changes thereon initialed by the parties either in person, electronically, via facsimile machine, or by execution of a new replacement Load Confirmation. Executed Load Confirmation(s) with respect to a shipment shall constitute an addendum to this Contract with respect to that shipment only; and the terms and conditions of this Contract shall govern all other shipments unless Load Confirmation are executed with respect to the other shipments. The originals or copies of all Load Confirmations shall be retained by **CARRIER** and by T.G.R. together with this Contract during the term of this Contract and three (3) years thereafter.

6. **Refused Shipment.** If the consignee refuses a shipment tendered for delivery by **CARRIER**, **CARRIER** shall (a) immediately provide direct notice to T.G.R., (b) place the lading in public storage, if available, unless **CARRIER** receives contrary disposition instructions from T.G.R. within twenty-four (24) hours, and (c) if disposition instructions are not given by T.G.R. within ten (10) days of **CARRIER**'s initial notification to T.G.R., **CARRIER** may offer the shipment for public sale. In the case of perishable cargo, **CARRIER** may dispose of the lading at a time and in a manner **CARRIER** deems appropriate, but not without first notifying T.G.R. and failing to receive instructions within twenty-four (24) hours thereafter. To the extent any sale or disposal revenues exceed the storage costs and the costs **CARRIER** incurs, **CARRIER** shall remit the balance to T.G.R. If T.G.R. gives **CARRIER** timely disposition instructions, **CARRIER** shall use any commercially reasonable steps to abide with such instructions.

7. **Rates and Charges.**

   a. **Rates.** The rates and charges **CARRIER** agrees to bill T.G.R. and accept as its full consideration for all services provided under this Contract, and the rates and charges T.G.R. agrees to pay **CARRIER** for all services provided under this Contract, shall be those rates and charges set forth in the Load Confirmation for each shipment. In the event the rates and charges are not set forth in a Load Confirmation, the default rate to be paid by T.G.R. to **CARRIER**, and accepted by **CARRIER** as its full compensation, shall be and is $1.70 per loaded mile.

   b. **Responsibility.** T.G.R. shall be solely responsible for the payment of all of **CARRIER**'s charges, and **CARRIER** shall not invoice or otherwise seek to collect its charges from any person or entity other than T.G.R.

   c. **Collection.** **CARRIER** authorizes T.G.R. to invoice shipper, receiver, consignor, consignee, or "bill-to" party" for freight charges as a limited special agent for and on behalf of **CARRIER**. Payment of the freight charges to T.G.R. shall relieve shipper, receiver, consignor, consignee, and "bill-to" party of any liability to the **CARRIER** for non-payment of charges or undercharge claims. T.G.R. is not **CARRIER**'s agent for any purpose other than as specified in this paragraph 7. c.

   d. **Time Limitation.** Any claim for under-payment or non-payment of a rate or charge by **CARRIER** against T.G.R. must be made within ninety (90) days after T.G.R.'S payment to **CARRIER** for services provided in connection with the shipment underlying the claim. Any claim for return of an overpayment by T.G.R. against **CARRIER** must be made within thirty (30) days after the date of T.G.R.'S payment to **CARRIER** for services provided in connection with the shipment underlying the claim.



CARRIER'S INITIALS
QM  10/1/19
(Date)

e. **Right of Set-Off.** In the event of an overcharge, over-collection, duplicate payment, claim for loss, damage, delay or injury to or in connection with a shipment, claim for personal injury (including death) or damage to property (including claims for loss, damage or delay), or other claim filed with CARRIER, T.G.R., or any of their respective insurers in connection with service provided or agreed to be provided by CARRIER hereunder, CARRIER agrees that T.G.R. shall have the right to set-off an amount sufficient to cover the claim, and to deduct and withhold such amount from any payments due CARRIER. As part of the amount set-off, T.G.R. shall have the right to withhold any and all administrative expenses, attorney fees, adjustment fees, insurance deductible, or other cost, fee or expense, of whatever kind, incurred or reasonably anticipated to be incurred by T.G.R. in connection with the claim giving rise to the set-off.

8. **Independent Contractor Relationship.** The relationship of CARRIER to T.G.R. shall at all times be that of an independent contractor, except that T.G.R. shall be the limited special agent for the CARRIER solely for the collection of freight charges under paragraph 7.c. CARRIER shall be an independent contractor and not a servant, agent, employee, joint venturer or partner of T.G.R.. CARRIER shall be totally responsible for the following: Selection, compensation, working hours, working conditions, retention and discipline of personnel; supervision and control of the personnel of CARRIER and the means and manner in which they perform their duties; legality of length, weight and height of cargo as loaded, selection of routing, periods of rest, times for maintenance, maintenance of logs, safety precautions and all such other activities involved in performing CARRIER's duties hereunder; compliance with federal, state, provincial, municipal and other applicable motor carrier and other laws and regulations; payment of all federal, state, provincial and local personal and business income taxes, sales and use taxes, social security contributions, unemployment taxes, workers' compensation premiums or expenses, other expenses or contributions typical for employees; business and license fees, fines or penalties, and fines, penalties or interest on any of the foregoing arising out of the activities of CARRIER pursuant to this Contract; selection, repair and maintenance of all equipment; and all costs and expenses incurred in providing services hereunder. CARRIER shall have sole and absolute discretion whether to accept or reject any shipment tendered to it by T.G.R. for transportation.

9. **Third-Party Beneficiaries.** T.G.R.'S customers, the consignors and consignees named on the bills of lading, the owner of the goods, and their assigns, are third-party beneficiaries of this Contract and may rely on it to seek recovery of claims from CARRIER or in defending any claims made against any of them.

10. **Force Majeure.** Neither party is liable for the failure to tender or timely transport shipments under, or comply with the provisions of, this Contract if the delay or other omission is caused by strikes, acts of God, war, civil disorder, or through compliance with legally constituted order of civil or military authorities.

11. **Attorney Fees.** In any arbitration, mediation, lawsuit, or other legal proceeding involving this Contract, the prevailing party shall recover from the losing party amounts the court, arbitrator or mediator, as the case may be, determines reasonable as costs and attorney fees for the proceeding, action or suit, including appeals, in addition to any other sums as may be allowed as provided by law.

12. **Non-assignment.** Neither party shall sell, convey, assign, transfer, dispose or encumber any of its rights, interests, benefits, obligations or liabilities under this Contract without obtaining prior written consent of the other party.

13. **Integration.** This Contract embodies the entire understanding between parties, and it is agreed that there are no other arrangements, agreements or understandings, oral or written, which affect this contract in any way. This Contract may not be changed, waived or modified except by written agreement signed by both parties stating that it is an amendment to this Contract.

14. **Severability.** If any term, provision, covenant or condition of this Contract is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

15. **Governing Law; Jurisdiction; Venue.** This Contract shall be governed by and construed in accordance with the laws of the State of Oregon, except to the extent preempted by federal transportation law, including, but not limited to, 49 USC Subtitle IV, Part B. Any action filed in relation to this Contract must be filed in the Circuit Court of the State of Oregon for Multnomah or Clackamas County or, subject to jurisdictional limitations, the United States District Court for the District of Oregon, Portland Division, which courts shall have exclusive jurisdiction. The parties agree that any lawsuit for loss, damage and/or delay under subparagraph 4.f. shall be subject to 49 USC 14706 (the Carmack Amendment) and that 28 USC §§ 1337 (a) and 1445 (b) apply, and that those statutes are not waived pursuant to paragraph 1.c. herein, except to the extent a conflict exists. CARRIER agrees to, and hereby does, submit to the exclusive jurisdiction of these courts and further consents that the proper and exclusive venue for any action shall be in Multnomah or Clackamas County, Oregon.

7 –   BROKER-CARRIER CONTRACT
(F:\CLIENTS\6312\6312-1\Corporate\2014-05-16 Broker Carrier Contract-Final.doc)



CARRIER'S INITIALS
DM  10/1/19
(Date)

16. **Nonwaiver.** Waiver of any default or breach of this Contract or of any warranty, representation, covenant or obligation contained herein shall not be construed as a waiver of any subsequent breach.

17. **Authority of Representatives to Bind Parties.** The parties warrant that the persons signing this Contract respectively for CARRIER and T.G.R. are their authorized representatives to sign such Contract. No further proof of authorization is or shall be required.

18. **Originals and Counterparts.** This Contract may be executed in any number of identical counterparts, and each such counterpart shall be deemed a duplicate original hereof. Facsimile and electronically signed copies of this Contract shall have the same force and effect as an original

19. **Notices.** All notices and other communications under this Contract must be in writing and will be deemed to have been given if delivered personally, sent by facsimile (with confirmation), mailed by certified mail with return receipt requested, or delivered by an overnight delivery service (with confirmation) to the parties at the addresses or facsimile numbers (or at such other address or facsimile number as a party may designate by like notice to other party) set forth below.

20. **Non-Exclusive Contract.** CARRIER and T.G.R. acknowledge and agree that this Contract does not bind the respective Parties to provide exclusive Services to each other. Either party may enter into similar agreements with other shippers, carriers, brokers, or freight forwarders.

**CARRIER:**

_DD+S Express Inc._
(Name of Carrier)

By _D. Miller_
Signature

_D. Miller, Operations Manager_
Printed Name and Title

Location Address:
_185 Henry S. Truman Pkwy, Suite 116_
_Annapolis, MD 21401_

Mailing Address:
_Same_

Phone: _202-696-1500_
Fax:   _301-386-0700_
Email: _operations@dd2sexpress.com_

**T.G.R.:**

T.G.R. LOGISTICS, LLC

By _[signature]_   _Owner_
    Signature              Title

_Tony Rudnitsky_
Printed Name and Title

Mailing Address:
13990 Fir Street
Oregon City, OR 97045

Phone: (503) 908-7200
Fax:   (503) 517-3559

CARRIER'S INITIALS
_DM_  _10/1/19_
     (Date)

## EXHIBIT A

### CERTIFICATE OF ELECTION
### TO NOT MAINTAIN
### WORKER'S COMPENSATION COVERAGE

The undersigned, as authorized representative of the motor carrier named below, hereby warrants and represents to T.G.R. that such motor carrier is not required by the laws of the State of _____, its governing state, to maintain Worker's Compensation insurance, and further that it has elected not to maintain such insurance.

In the event that motor carrier subsequently either (1) becomes subject to any State's applicable Worker's Compensation law, or (2) motor carrier's maintenance of Worker's Compensation insurance remains elective but the motor carrier elects to maintain such insurance, then the motor carrier will provide T.G.R. with evidence of such insurance in compliance with the terms of Contract Carrier Contract between the parties.

Motor Carrier: _____

Signature: _____

By: _____
    Name Typed or Printed

Its: _____
    Title

Date: _____

*WC Listed on COI*

1 – BROKER-CARRIER CONTRACT-EXHIBIT A
(w: f:\clients\6312\6312-1\corporate\2014-05-16 broker carrier contract-final.doc)



CARRIER'S INITIALS

EXHIBIT B

Attention: All Carrier & Drivers

RE: FOOD Security

You are responsible for the security of the food products in your trailer from origin to destination.

Government regulations and T.G.R. policy require that your trailer be **locked at all times** unless you are in the process of actively loading or unloading at the designated shipper or consignee.

In addition, there may be times when the shipper seals your load and you need to maintain a continuous seal record. Do not break the seal prior to checking in for delivery or without contacting your dispatcher for direction.

Protect yourself and the public.

If you believe your load has been tampered with in any manner, immediately report the incident to T.G.R. by calling your dispatcher.

**Padlock your trailer.**



1 -  BROKER-CARRIER CONTRACT-EXHIBIT B
     (w: f:\clients\6312\6312-1\corporate\2014-05-16 broker carrier contract-final.doc)



CARRIER'S INITIALS
DL 10/1/16
(Date)

# EXHIBIT D

## C.A.R.B. ADDENDUM
## TO
## T.G.R.-CARRIER CONTRACT

To the extent that any shipments subject to the Contract are transported within or through the State of California, on or after January 1, 2013, **CARRIER** warrants that:

(1) All trailers, including both dry-van and refrigerated equipment it operates and the Heavy-Duty Tractors that haul them within California under this Contract are in compliance with the California Air Resources Board (ARB) Heavy-Duty Vehicle Greenhouse Gas (Tractor-Trailer GHG) Emission Reduction Regulations; and

(2) All refrigerated equipment it operates within California under this Agreement is in full compliance with the California Air Research Board (ARB) Transport Refrigeration Unit (TRU) Airborne Toxic Control Measure (ACTM) regulations.

**CARRIER** shall defend, indemnify and hold **T.G.R.** harmless from and against any penalty, liability, expense (including administrative costs and attorney fees) and other cost imposed on **T.G.R.** resulting from or arising out of **CARRIER's** failure to strictly comply with the requirements of this C.A.R.B. Addendum. **CARRIER's** obligation under this paragraph to defend, hold harmless and indemnify **T.G.R.** shall survive any termination of the Contract.

CARRIER:

By: _D. Miller_____
(Signature)

_D. Miller_    _Operations Manager_
(Printed Name)       (Title)

1 -- BROKER-CARRIER CONTRACT-EXHIBIT D
(w: f:\clients\6312\6312-1\corporate\2014-05-16 broker carrier contract-final.doc)

CARRIER'S INITIALS
DM  8/1/19
(Date)